IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS G. KUNKLE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 15-896 |
| | : | |
| v. | : | |
| | : | |
| ANDREA NAUGLE, Individually and as | : | |
| Clerk of Judicial Records for the County of | : | |
| Lehigh (aka Clerk of Courts or | : | |
| Prothonotary), THE COUNTY OF | : | |
| LEHIGH, WILLIAM BERNDT, | : | |
| Individually and as Court Administrator for | : | |
| Lehigh County, and CAROL K. | : | |
| MCGINLEY, Individually and as President | : | |
| Judge for the Court of Common Pleas of | : | |
| Lehigh County, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                    December 2, 2015

The substantive factual allegations underlying this action, an action brought by an attorney appearing *pro se*, begin as follows: "[a]fter listening to President Elect Barak [sic] Obama . . . , I was motivated to challenge the idea that there are no federal usury rate ceilings on lines of credit issued by national banks and accessed by credit cards to a conclusive and precedential court opinion."  First Am. Compl. at ¶ 9, Doc. No. 8.  From there, the allegations take off.  In the main, the plaintiff alleges that various public officials conspired to deny him, and did in fact deny him, access to an electronic-filing pilot program sponsored by the Court of Common Pleas of Lehigh County as he attempted to implement his litigation agenda—he has since been granted access to the current electronic filing system.  As redress for variously alleged constitutional violations, he seeks hundreds of thousands of dollars in compensatory and punitive damages.  Asserting "Private Attorney General Status for the County of Lehigh," he also

requests that the court dissolve the Lehigh County Home Rule Charter as unconstitutionally vague because it "causes great confusion regarding the fundamental rights of its officers and citizenry." *Id.* at ¶¶ 114, 141.

For various jurisdictional and nonjurisdictional reasons (some raised by the defendants in motions to dismiss and some not), the court is compelled to dismiss this action. Because the various defects are incurable as a matter of law, the court will not allow the plaintiff to file a seconded amended complaint. The court formally disposes of all outstanding motions in a separate order.

## I.  PROCEDURAL HISTORY

The plaintiff commenced this action by filing a complaint on February 23, 2015. *See* Compl., Doc. No. 1. In response to numerous motions to dismiss, the plaintiff filed a first amended complaint on April 8, 2015. *See* First Am. Compl. In filing this complaint, he added a fourth defendant, the Honorable Carol K. McGinley, and attached approximately 165 pages worth of exhibits. *See id.*; *see also* Doc. Nos. 8-1 to 8-10, 9-1 to 9-2. Attacking the first amended complaint, all named defendants filed motions to dismiss. *See* Doc. Nos. 14-15, 21. In addition to responding to these motions, the plaintiff subsequently filed a motion for leave to file a second amended complaint. *See* Doc. Nos. 18, 27; *see also* Doc. No. 23. All defendants filed a response to the motion for leave. *See* Doc. Nos. 25-26. The plaintiff filed a reply in support of this motion on June 26, 2015. *See* Doc. No. 28. The court held oral argument on all outstanding motions on June 30, 2015.

## II.  FACTUAL ALLEGATIONS

Because the defendants request that the court dismiss this action at the pleading stage, the factual allegations appearing in the first amended complaint, as the operative complaint, take on critical importance. Given both this procedural posture and the expansive remedies sought by

the plaintiff, it is worthwhile to appreciate the full scope of these allegations.  The court fleshes

them out below.

The introduction to the first amended complaint reads as follows:

Counts One and Three of this legal action are for damages pursuant to the Revised U.S. Statutes of 1875, sections 1979 and 1980 for deprivation of and conspiracy to deprive me of access to the Lehigh County Clerk of Judicial Records electronic filing system in violation of my Fourteenth Amendment constitutional right to equal privileges and immunities. Count Two is for First Amendment retaliation and deprivation of my right to petition the County of Lehigh Government for redress of grievances. 42 U.S.C. § 1983, 42 U.S.C. § 1985(2)(3), 12 U.S.C. § 86, U.S. Const. amend. XIV §1, U.S. Const. amend. I.

Count Four is a private attorney general action to dissolve the Lehigh County Home Rule Charter as unconstitutionally vague. U.S. Const. amend. XIV §1, U.S. Const. amend. I.

First Am. Compl. at ¶ 1.  As suggested in the introduction to this memorandum opinion, the

plaintiff's interest in electronic filing flowed, at least in part, from his attempt to undertake a

particular litigation strategy after listening to a speech delivered by "President Elect Barak [sic]

Obama" in 2009.  *Id.* at ¶ 9.  To that end, he alleges the following:

I used the Defendant County of Lehigh's public access system to solicit defendants in credit card and similar consumer debt cases and counter sued or claimed setoffs primarily pursuant to the National Bank Act of 1864, Revised Statutes §5198 as amended on behalf of these defendants a number of whom have been and are disabled and a number of who were English speaking deficient. 12 U.S.C. § 86.

*Id.* at ¶ 15.  As part of this litigation strategy, he further alleges that he "argued that defendants in

credit card cases were entitled to counter claim or set off an amount of damages pursuant

§5198." *Id.* at ¶ 16.  But because "the typical client was insolvent and [due to] the short period

of time limitation," "a high volume of cases was necessary to provide a viable appellate case to

make a legal challenge to the lack of enforcement of §5198." *Id.* at ¶ 17.

Apparently, the plaintiff's advocacy did not go unnoticed.  For example, he alleges that,

on "the morning" of a trial, a judge barred him from saying "the words 'usury' or 'illegal interest

rates' during the course of the trial."[1]  *Id.* at ¶ 22.  In addition, he alleges that various federal judges remanded cases that he had attempted to remove "because of the 'well pleaded complaint doctrine.'"  *Id.* at ¶ 32.  He continues as follows:

> 33.    After the remand people were aware of my National Bank Act advocacy and I would have to wait for the right plaintiff's attorney to come along for my next chance prove the existence of federal usury rate ceilings.

> 34.    The procedural remands were discouraging and the county judges [sic] continued intolerance regarding my §5198 federal counterclaims oppressive. From 2011 to 2012 I had around 14 cases each year so I was down around 23 cases or so from 2009 and 2010.

*Id.* at ¶¶ 33-34.  Getting back to the heart of his Fourteenth Amendment claim, he alleges that he "would have benefited greatly from the efficiency of electronic filing because of the general insolvency of the consumer debt defendants and short look back period on the §5198 claim that must be filed within two years of the usurious transaction."  *Id.* at ¶ 35.

With the advertising of an "e-filing pilot program open to select lawyers and firms," the plaintiff "re-applied for the 'pilot program' with lingering doubt [he] might not be selected because of [his] counterclaims pursuant to the National Bank Act of 1864, R.S. § 5198."  *Id.* at ¶¶ 41-42.  On June 20, 2013, the defendant, William Berndt ("Berndt"), informed the plaintiff that President Judge McGinley had denied him access to the program.  *See id.* at ¶ 43.  After appealing to President Judge McGinley, the plaintiff "paid $65.00 to file a King's Bench Application with the Pennsylvania Supreme Court Prothonotary pursuant to its inherent Constitutional powers to administer the courts. The Supreme Court Prothonotary seemed bent on [his] redefining the King's Bench Application as a mandamus action [sic] [he] declined and it was denied."  *Id.* at ¶ 47.  Though the plaintiff could not access the electronic filing system, "at

---

[1] Claiming that adverse judicial rulings "peaked [sic]" his "curiosity about the judges," the plaintiff later requested the settlement agreement "from the County right to know officer" in "an access denial and lack of counsel case filed on behalf of disabled Hispanic individuals based on arrests for unpaid parking tickets."  *Id.* at ¶¶ 27-28.

least twenty law firms and individual attorneys" could access the system.[2]  *Id.* at ¶ 58.  And although he "repeatedly asked the defendants for a reason why [he] was being excluded from the electronic filing system," he "never got a satisfactory response."[3]  *Id.* at ¶ 71.

Thereafter, and "[a]s a result of being excluded from the electronic filing system," the plaintiff "started ghost writing on behalf of defendants in two cases and stopped representing and entering appearances in new consumer debt cases in 2014 in the Lehigh County Court of Common Pleas."[4]  *Id.* at ¶ 62.  As an additional measure, and on September 24, 2014, he "demanded damages from the County Commissioners . . .  in the amount of $1,000.00 per day from the access denial date notice June 20, 2013, forward until granted full and equal access to the electronic filing system."  *Id.* at ¶ 73.  He "reiterated" his demand on February 19, 2015, and demanded "an additional $150,000.00" for "First Amendment retaliation."  *Id.*  The description of Count One ends as follows:

> 74.    Six hundred thirty eight days after June 20, 2013 after filing this legal action I was granted full and equal access to the Naugle, Berndt, McGinley electronic filing system same as my former adversaries as indicated by local rule 205.4 effective on March 16, 2015 by its publication on the Unified Judicial System Web Application Portal.
>
> 75.    I have been excluded from the electronic filing system under color of law for raising my clients' right to counter claim or otherwise set off damages primarily pursuant to 12 U.S.C. § 86 because a number of cases have not been set down for damage arbitrations by Naugle contrary to Pa. R.C.P. No. 1037(b)(1) and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

*Id.* at ¶¶ 74-75.

---

[2] The plaintiff claims that "[t]he President Judge's[(*i.e.,* Judge McGinley's)] former law firm Gross McGinley, LLP a 30 plus member firm was allowed to use the electronic filing system."  *Id.* at ¶ 61.

[3] He further specifies: "Berndt repeatedly said he was expecting module updates, Naugle told [him] that there were bugs in the system and McGinley's secretary told [him] to check with Berndt."  *Id.* at ¶ 72.

[4] Although this conduct occurred in state court, some federal judges have observed that "such a practice is strongly disapproved as unethical and as a deliberate evasion of the responsibilities imposed on attorneys."  *Karpov v. Karpov*, No. 12-1411-GMS, 2013 WL 653965, at *4 n.3 (D. Del. Feb. 20, 2013); *see Davis v. Back*, No. 3:09CV557, 2010 WL 1779982, at *13 (E.D. Va. Apr. 29, 2010) (stating same).

As highlighted by the above demand for "First Amendment retaliation," the plaintiff also takes issue with how he was treated when he spoke up about the denial of admission to the "e-filing pilot program."  Having become "fed up with inadequate excuses from Naugle like 'bugs in the system' and from Berndt that 'I'm expecting another module,'" the plaintiff began to publicly voice his disapproval.  *Id.* at ¶ 80.  Indeed, and as an illustration, he complained about the denial at a "Commissioners meeting" on September 10, 2014.  *Id.* at ¶ 81.  At that meeting, and perhaps at the direction of President Judge McGinley, Berndt responded to the plaintiff's concerns by informing him of the following:

> I think Mr. Kunkle is profoundly mistaken we don't have an e-filing program. We do not have an e-filing program. We have a pilot program.
>
> The e-filing program has been in pilot for the last year. Pilot means the President Judge the President Judge selected the firms and individuals who can participate in the pilot program in order to get this thing to where she feels it is perfected enough to open to the public. It's not open to the public. No one is being disaffected by this because they don't have access to something we don't have. And to in order to claim that it is an ADA action or action against the infirm and elderly as he puts it in his emails folks we have had a court house for over 200 years and we have not discriminated against anybody who is elderly or anybody who is infirm or anybody who is ADA. We don't have an electronic filing system. Judge McGinley being the good republican that she is has made it pretty clear that she does not want this e-filing system open to the public of which Mr. Kunkle will be one because he is not in the pilot program at this time, that she wants this to work when its rolled out and she wants it to work well she does not want it as she compared it to she doesn't want it compared to what people are thinking some people in this country thought Obama Care was a really great program. It fell apart and got a big black eye when the IT platform didn't work. She doesn't want the IT platform not to work she's going through very meticulously every little thing with e-filing to make sure that when we open this up to the public that it is available for everyone to use and that it works well . . . .
>
> I only have one message to give him from the President Judge she asked me to give him tonight. If this pilot program goes for another two weeks another two months or another six months you are not in the pilot program and you're not going to be in the pilot program. That's her message to you.

*Id.* at ¶ 85 (original unaltered) (reflecting the plaintiff's description of Berndt's response).

Although in the form of a legal conclusion, the plaintiff maintains that Berndt's message "was in

retaliation to [, among other things,] [his] attempt to gain equal access to the electronic filing system." *Id.* at ¶ 86.

In connection with his "demand for damages on the County Commissioners," which in turn was forwarded to "the Solicitor" (presumably the County Solicitor), the plaintiff alleges that the County Solicitor's appointment is "clouded by inconsistencies" and that the County Solicitor "failed [to] forward [his] legal demands to all those legally responsible or to advise those responsible to take corrective action." *Id.* at ¶¶ 88, 96, 103. Due to the fact that the County Solicitor did not appear at the September 10 meeting, the plaintiff also contends that he has "a reasonable expectation that the County Solicitor will attend the Lehigh County Commissioner meetings to enforce [the plaintiff's] right to petition the government for redress of grievances." *Id.* at ¶¶ 83, 102. The description of Count Two ends as follows: "[o]n September 17, 2014, 7 days after I complained to the Lehigh County Board of Commissioners Andrea Naugle Clerk of Judicial Records testified at the budget hearing before the commissioners and not one commissioner bothered to inquire about my electronic filing access denial." *Id.* at ¶ 105.

While these allegations make up the bulk of the first amended complaint, the plaintiff adds a few more factual allegations (and legal conclusions as well) in rounding out the final two counts of this complaint. In Count Three, the plaintiff alleges a conspiracy among the three individual defendants in that:

> McGinley, Berndt and Naugle agreed to participate in a ruse 'the pilot program' to supplant Naugle's authority and duties pursuant to the Home Rule Charter as the Elected Lehigh County Clerk of Judicial Records to deny [him] [his] rights to equal privileges and immunities by refusing [him] access to the County of Lehigh's electronic filing system.

*Id.* at ¶ 107. Finally, and in Count Four, he assumes "Private Attorney General Status for the County of Lehigh" in seeking the dissolution of the Lehigh County Home Rule Charter. *Id.* at ¶ 114.

In terms of remedy, the plaintiff seeks a substantial amount of compensatory and punitive damages from both the entity-defendant and the individual defendants in their official and personal capacities.  *See id.* at Counts One-Three.   As previously stated, he also seeks presumably some form of prospective relief in connection with his request to strike down the Lehigh County Home Rule Charter.  *See id.* at Count Four.

## III.   DISCUSSION[5]

Because it is somewhat difficult to discern from the first amended complaint the precise nature of the claims advanced by the plaintiff, the court takes the following guidance from the plaintiff himself:

> The First three counts of the First Amended Complaint lay out the causes of actions for deprivation and conspiracy to deprive me of my Fourteenth Amendment and First Amendment constitutional rights respectively. Additionally a federal statutory claim pursuant to the retaliation regulation of enforcement of the Americans with Disabilities Act has been asserted in count two with the non statutory First Amendment retaliation claim as the facts are similar.

Responsive Br. in Opp'n to the Defs.' Rule 12 Mots. to the First Am. Compl. at 1, Doc. No. 18-1.  Matched against the factual allegations and requests for relief contained in the first amended complaint, these claims appear to sit at the heart of the following dynamic: "[s]uits for monetary damages are meant to compensate the victims of wrongful actions and to discourage conduct that may result in liability. Special problems arise, however, when government officials are exposed

---

[5] The court has subject-matter jurisdiction over the federal claims in Counts One, Two, and Three pursuant to 28 U.S.C. § 1331.  Those claims, therefore, are resolved on the merits.  For the reasons expressed in the body of this memorandum opinion, however, the court lacks subject-matter jurisdiction over the claim contained in Count Four because the plaintiff does not possess Article III standing to seek the dissolution of the Lehigh County Home Rule Charter.  Concomitantly, the court never reaches the merits of the dissolution claim.

     To the extent that the merits are considered, the court recognizes that, under Federal Rule of Civil Procedure 12(b)(6), "a complaint must be dismissed if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, the complaint fails to show that the plaintiff has a plausible claim for relief."  *Swope v. Northumberland Nat. Bank*, No. 14-4020, 2015 WL 4591794, at *2 (3d Cir. July 30, 2015) (internal quotation marks and citation omitted).  Should an affirmative defense come into play, the court further acknowledges that "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face."  *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (footnote and citations omitted).

to liability for damages." *Forrester v. White*, 484 U.S. 219, 223 (1988).  Given the unique, and sometimes unclear, nature of the plaintiff's allegations, the court finds that the above dynamic is best navigated in this case by taking seriously the proposition that courts "must strive to resolve cases on statutory rather than constitutional grounds."[6]  *O'Keefe v. Chisholm*, 769 F.3d 936, 939 (7th Cir. 2014) (Easterbrook, J.) (citation omitted).  Not surprisingly, then, the court concludes that, for the most part, the above claims are best disposed of through the nonconstitutional lens of immunity.[7]  In what follows, the court explains that analysis.  Count Four is discussed separately, as it raises a jurisdictional defect not common to the other Counts.

## A.      Section 1983 Claims

To the extent that the plaintiff seeks damages pursuant to 42 U.S.C. § 1983 from the defendant, the Honorable Carol K. McGinley, in her official capacity, such claims must fail because President Judge McGinley is not a "person" within the meaning of the statute.  *See Arndt v. Bortner*, No. 14-1993, 2014 WL 5425423, at *2 (M.D. Pa. Oct. 22, 2014) (observing that a Common Pleas judge, when sued in an official capacity, is not a "person" "for purposes of liability under Section 1983").  This disposition applies with equal force to any official capacity claims against the defendants, Berndt (court administrator) and Andrea Naugle ("Naugle")

---

[6] While personal immunities are generally creatures of common law, rather than statute, the court notes that the "general rule of constitutional avoidance" played a role in *Pearson v. Callahan*, 555 U.S. 223, 241 (2009), the Supreme Court case that held that lower courts have flexibility in employing the "*Saucier* procedure" when considering the defense of qualified immunity.  *Id.* at 242.

[7] Of course, the adversary system counsels that "courts are generally limited to addressing the claims and arguments advanced by the parties." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (citation omitted). Insofar as the court raises immunities not pressed by the parties, the court observes that "in matters touching on the relations between federal and state government, waivers can be declined in the interest of comity." *Sullivan v. Conway*, 157 F.3d 1092, 1095 (7th Cir. 1998) (Posner, J.) (citations omitted).  In this case, and in the name of constitutional avoidance, the court is extraordinarily hesitant to pass upon the constitutionality of actions taken by state officials when there is an alternate, and more direct, mode of resolution.  Indeed, *Pearson* recognized that personal immunities can help curb the "[u]nnecessary litigation of constitutional issues." *Pearson*, 555 U.S. at 237. In other words, personal immunities advance interests that transcend the parties' immediate dispute.  The court can conceive of no good reason why this mode of resolution should not be available here simply because the defendants have raised some immunities, but not others.

In any event, it appears that the plaintiff himself, without prompting from the defendants, has discussed personal immunities. *See* Responsive Br. in Opp'n to the Def. McGinley's Rule 12 Mots. at 1-4, Doc. No. 27.  He has therefore pushed this issue to the forefront on his own initiative.

(prothonotary).  *See id.* (noting that court administrators "are entitled to Eleventh Amendment immunity" (citations omitted)); *Malcolm v. Beaver Cty. Pa. (Prothonotary)*, No. 13-CV-1772, 2014 WL 3892023, at *2 (W.D. Pa. July 31, 2014) (stating that "[t]he Prothonotary's Office (and thus the Prothonotary in her official capacity) . . . is not a 'person' under § 1983" (footnote omitted)).

Turning to any personal capacity claims, the court must also dismiss any damages claims against President Judge McGinley because she is, at a minimum, entitled to invoke qualified immunity.  Even presuming that President Judge McGinley cannot benefit from some form of absolute immunity (and that is a weighty presumption), she "is entitled to qualified immunity from a suit for damages."[8]  *Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989) (affirming the dismissal of a state court judge on the ground of qualified immunity).  At its core, "[t]he doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted).  Because "qualified immunity protects all but the plainly incompetent or those who knowingly violate the law," the inquiry into clearly established law "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Id.* (internal quotation marks and citations omitted).  In the circumstances of this case, and after a careful review of the allegations appearing in the first amended complaint, the court cannot conclude

---

[8] The court does not, because it need not, address the more complicated question whether President Judge McGinley can invoke absolute immunity, whether that immunity takes the form of judicial or legislative immunity. *See Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980) (holding that the Virginia Supreme Court and its members were entitled to legislative immunity with respect to the promulgation of the state bar code); *Huminski v. Corsones*, 396 F.3d 53, 76 (2d Cir. 2005) (claiming that "[a] court's control of its docket is also a judicial act because it is part of [a court's] function of resolving disputes between parties" (internal quotation marks and citation omitted)).

that President Judge McGinley violated any clearly established constitutional rights of which a reasonable official would be aware.

With respect to any personal capacity claims against the defendants, Berndt and Naugle, a slightly different analysis is in order. As to Berndt, one cannot escape the conclusion that he "is attacked solely for actions taken in his role as Court Administrator. Therefore, he is entitled to the protection of quasi-judicial immunity." *Conklin v. Anthou*, 495 F. App'x 257, 264 (3d Cir. 2012) (citations omitted). To the extent that the plaintiff advances a discernable claim against Naugle, it appears that she would be entitled to either quasi-judicial immunity or qualified immunity. *See Malcomb v. Beaver Cty. Pa. (Prothonotary)*, 616 F. App'x 44, 45 (3d Cir. 2015) (holding that a prothonotary was entitled to quasi-judicial immunity when the plaintiff "did not allege that the [p]rothonotary acted beyond her discretion, outside the scope of her duties, or contrary to her direction as a judicial officer" (citations omitted)); *Sherard v. Berks Cty.*, 576 F. App'x 66, 70 (3d Cir. 2014) (concluding that court officials, including a clerk of courts, were entitled to qualified immunity because they did not violate any clearly established rights).

Finally, and concerning the defendant, the County of Lehigh, it is quite difficult to understand how the plaintiff is not attempting to hold the County vicariously liable for the acts of its employees, which, of course, is improper.[9] *See Bush v. Dep't of Human Servs.*, 614 F. App'x 616, 619 (3d Cir. 2015) (confirming that "[a] municipality or other local governing body cannot be held liable pursuant to a theory of *respondeat superior* in an action under § 1983" (emphasis added) (citation omitted)). Although there is a suggestion that perhaps Naugle, who is not named as a defendant in Count Two, is a final policymaker, there is no indication that she could act as such a policymaker with respect to the electronic-filing pilot program. *See Angarita v. St.*

---

[9] The fact that these officials enjoy the benefit of the Eleventh Amendment does not preclude them from being considered local officials for other purposes. *See Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015) (Sutton, J.) (stating that officials "sometimes wear multiple hats").

11

*Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992) (stating that "the challenged action must have been taken pursuant to a policy adopted by the official responsible under state law for making policy *in that area* of the city's business" (emphasis added) (citation omitted)).  Indeed, the Pennsylvania Rules of Civil Procedure cited by the plaintiff in the first amended complaint delegate to "the court," not to the prothonotary or the clerk of court, the power to create an electronic filing system.  *See, e.g.*, Pa.R.C.P. No. 239.9.  In all other respects, the plaintiff has simply failed to put forth allegations "that allow [the] court to draw an inference that the governing body had a policy, custom, or practice that led to the constitutional violation." *Bush v. Dep't of Human Servs.*, 614 F. App'x 616, 619 (3d Cir. 2015) (citation omitted).

### B.     Section 1985 Claims

Insofar as the first amended complaint raises claims under 42 U.S.C. § 1985, those claims are barred against the individual defendants in their official and personal capacities.  *See Bisbee v. Bey*, 39 F.3d 1096, 1101-02 (10th Cir. 1994) (holding that "defendants in section 1985 actions" are entitled to claim personal immunities); *Nguyen v. Milliken*, No. 15-CV-0587 MKB, 2015 WL 1877662, at *3 (E.D.N.Y. Apr. 21, 2015) (applying the Eleventh Amendment to these types of claims).

### C.     ADA Claim

As stated earlier, the plaintiff claims that he is advancing "a federal statutory claim pursuant to the retaliation regulation of enforcement of the Americans with Disabilities Act."  In the first amended complaint, the plaintiff concludes Count Two by stating that he is seeking damages for his "right to be free from retaliation for exercising federal rights pursuant to federal regulation 28 C.F.R. Part 35 Subpart A § 35.134."  First Am. Compl. at 18.  To state a claim under this regulation, a plaintiff must allege that: "(1) he engaged in an activity protected by the Act[]; (2) the defendant took adverse action against him; and (3) there is a causal link between

12

his protected activity and the adverse action." *Barhite v. Brown*, No. 1:14-CV-218, 2014 WL 2918550, at *21 (W.D. Mich. June 26, 2014) (citation omitted).  Even giving the first amended complaint a generous reading, the plaintiff has failed to allege facts that would allow the court to plausibly infer that the causation prong has been satisfied.  To be sure, the first amended complaint indicates that he brought up ADA issues at the September 10, 2014 meeting, the very same meeting where he claims that the retaliation occurred.  *See* First Am. Compl. at ¶¶ 82-86. Given the way that this complaint is crafted, no reasonable inference can support the notion that any public official had knowledge of the plaintiff's ADA advocacy *before* handing down the alleged adverse decision (whatever that may be).  This claim must therefore be dismissed.[10]

### D.    <u>The Dissolution Claim</u>

Moving to the plaintiff's final claim, as described in Count Four, his request to have the Lehigh County Home Rule Charter dissolved presents a fundamental jurisdictional issue. "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citation omitted).  The plaintiff bears the burden "of establishing standing and must do so with respect to each type of relief [he] seek[s]."  *Hearring v. Sliwowski*, No. 14-6039, 2015 WL 7352008, at *3 (6th Cir. Nov. 20, 2015) (Sutton, J.) (citations omitted).  "To establish standing for a forward-looking injunction, a party must show a threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical."  *Id.* (internal quotation marks and citation omitted).  The plaintiff here fails all of these requirements. There is absolutely no indication in the first amended complaint that the plaintiff is subject to future harm of any kind.  To top it off, the requested relief likely fails the causation and

---

[10] It is not even clear that the plaintiff has attempted to legally support this claim in his briefs.

redressability prongs of Article III standing as well.  It is wholly unclear how the requested remedy relates, in any way, to the actions complained of.

### E.      Leave to Amend

Because the court will dismiss the first amended complaint, the court must entertain the question whether the plaintiff should be afforded the opportunity to file another complaint.  This question becomes all the more important given the plaintiff's *pro se* status (although he is a lawyer) and the nature of the allegations.  To the court's benefit, the plaintiff has filed a motion for leave to file a second amended complaint that spells out his desired amendments.  *See* Rule 15(d) Mot. to Suppl. Action Based Upon Subsequent Facts to its Filing, Doc. No. 23.  After reviewing the purported amendments, and "[b]ecause the defendants are either not capable of being sued or [the plaintiff's] claims against them are legally flawed," the court concludes that leave to amend is not appropriate as any amendments would be futile.[11]  *Naranjo v. City of Philadelphia*, No. 15-1298, 2015 WL 5334014, at *2 (3d Cir. Sept. 15, 2015) (citations omitted).

This is not a case where a *pro se* plaintiff has failed to add flesh to the bones.  All of the plaintiff's complaints have been detailed, to the point of even including extraneous material.  This is simply a case where a generous reading of the factual allegations does not entitle the plaintiff to any relief.

### IV.     CONCLUSION

The allegations underlying this action are uncommon and, at times, unclear.  When mixed with fundamental issues regarding local governance, the need to avoid unnecessary constitutional adjudication becomes paramount.  Invoking various species of immunity (expressed in a largely nonconstitutional manner) and Article III standing (ironically expressed in a constitutional

---

[11] The addition of any state-law claims would not help the plaintiff as there would be no federal claims to anchor the court's original jurisdiction.

manner), two doctrines that, at some level, merge to serve similar purposes, the court is able to accommodate that need.  Accordingly, the court dismisses this action without leave to amend.

The court will issue a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.